## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KIEANNA BROOKS**, | ) | |
| c/o Cornerstone Law Firm | ) | |
| 8350 N. St. Clair Ave, #225 | ) | |
| Kansas City, MO 64151 | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| **UNIVERSITY OF KANSAS HOSPITAL** | ) | |
| **AUTHORITY,** | ) | **REQUEST FOR JURY TRIAL** |
| *Chief Executive Officer:* | ) | |
| 3901 Rainbow Blvd. | ) | |
| Kansas City, KS 66160 | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Kieanna Brooks, by and through her attorney, and for her cause of action against Defendant University of Kansas Hospital Authority states and alleges as follows:

### Parties and Jurisdiction

1. This is an employment case based upon the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), Title VII of the Civil Rights Act 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA").

2. Plaintiff Kieanna Brooks ("Plaintiff") is an African American female citizen of Kansas City, Jackson County, Missouri.

3. Defendant University of Kansas Hospital Authority ("UKHA") is and was at all relevant times a body political and corporate created pursuant to Kansas statute and an

independent instrumentality of the state of Kansas with the power to sue and be sued in its own name.

4.   UKHA conducts substantial and continuous business in the State of Kansas.

5.   At all relevant times, UKHA employed fifty (50) or more employees within a seventy-five (75) mile radius.

6.   At all relevant times, UKHA employed more than five hundred (500) employees.

7.   At all relevant times, UKHA engaged in interstate commerce.

8.   UKHA is an employer within the meaning of the ADAAA.

9.   UKHA is an employer within the meaning of the FMLA.

10.   UKHA is an employer within the meaning of Title VII.

11.   UKHA employed Plaintiff at its Quivira Specialty Care facility beginning around June 2015 until it terminated her employment on or about January 11, 2017.

12.   Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

13.   Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged discriminatory conduct occurred in this District.

## Administrative Procedures

14.   On February 16, 2016, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against UKHA, alleging discrimination based on race, pregnancy, and disability (attached as Exhibit 1 and incorporated herein by reference).

15. On May 24, 2017, the EEOC issued Plaintiff a Notice of Right to Sue (attached as Exhibit 2 and incorporated herein by reference) and this lawsuit was filed within ninety days of the issuance of the same.

16. The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

17. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

18. This action is filed within the applicable statutes of limitations.

### Additional Factual Allegations

19. Around June 2015, Plaintiff began working for UKHA as a Medical Assistant.

20. As a Medical Assistant, Plaintiff was responsible for preparing patients for examination by a physician.

21. On or around May 19, 2016, Plaintiff disclosed that she was pregnant to her supervisor, Krystal Hardman ("Hardman").

22. Prior to disclosing her pregnancy, Plaintiff had not been the subject of any formal reprimand at UKHA.

23. After Plaintiff disclosed her pregnancy to Hardman, Hardman began subjecting her to disparate treatment.

24. For instance, Hardman typically allowed Plaintiff's non-pregnant and/or Caucasian coworkers (as well as Plaintiff, prior to disclosing her pregnancy) to take time off when they requested it.

25.  After Plaintiff disclosed her pregnancy, Hardman began denying Plaintiff's occasional requests for time off, and often had no valid reason for doing so.

26.  On one occasion when requested to take time off after disclosing her pregnancy, Hardman instructed Plaintiff's coworkers to vote on whether Plaintiff should be allowed the day off.

27.  In approximately June 2016, a patient with shingles arrived at UKHA for treatment.

28.  Initially, Plaintiff's non-pregnant coworker was assigned to help prepare the patient for examination, but Hardman intervened and told Plaintiff that she was responsible for assisting with the patient.

29.  Because of the risks associated with fetal exposure to shingles, Plaintiff reminded Hardman that she was pregnant and should avoid exposure to patients with shingles.

30.  Hardman ignored Plaintiff's concerns of shingles exposure and told Plaintiff that she was responsible for assisting the patient with shingles.

31.  During Plaintiff's employment, UKHA required its employees to complete incident reports when they had been exposed to hazardous conditions.

32.  After Plaintiff finished assisting with the patient with shingles, she completed an incident report to document the encounter.

33.  After Plaintiff completed the incident report, Hardman read the report and told Plaintiff that she had provided too much information.

34.  Hardman altered Plaintiff's report and instructed Plaintiff to sign it before Hardman turned it in to the administration.

35.  In approximately July or August 2016, despite Plaintiff's objections, Hardman again required Plaintiff to room a patient with shingles.

36.  Plaintiff completed another incident report as a result of being exposed to shingles, and Hardman—for a second time—altered the contents of Plaintiff's incident report before submitting it to the administration.

37.  Hardman did not require Plaintiff's Caucasian and/or non-pregnant coworkers to assist with patients with shingles.

38.  During her pregnancy, Plaintiff received prenatal care at UKHA.

39.  Generally, patients at UKHA's Quivira Specialty Care facility would wait in the common hallway between exam rooms to have their vitals taken.

40.  However, when Plaintiff would receive treatment at UKHA's Quivira Specialty Care facility, Hardman would force Plaintiff to wait in an exam room before having her vitals taken.

41.  Additionally, whenever Plaintiff would receive treatment at UKHA's Quivira Specialty Care facility, Hardman would prohibit Plaintiff from interacting with any of her coworkers.

42.  The additional restrictions Hardman placed on Plaintiff's treatment was typically reserved for those patients that had been brought from the nearby penitentiary for care.

43.  During her pregnancy, Plaintiff was diagnosed with polyhydramnios and placenta previa, and tests indicated that there were issues with the blood flow around the baby's heart.

44.  On approximately September 19, 2016, Hardman issued Plaintiff a written warning and suspended her.

45.  Plaintiff's written warning on September 19, 2016 was the first time she had received any formal discipline at work.

*Brooks v. University of Kansas Hospital Authority*
Case No. _____
Plf.'s Complaint                    5 of 23

46.  After Hardman issued Plaintiff a written warning, Plaintiff called UKHA's Human Resources (HR) department and made a good faith report of pregnancy discrimination.

47.  On or about December 6, 2016, Plaintiff submitted a request for intermittent FMLA leave to be taken as needed until the birth of her baby in January of 2017.

48.  On or about December 6, 2016, Plaintiff submitted a request for continuous FMLA leave to take place after her baby was born.

49.  On December 13, 2016, Plaintiff was notified that she was eligible for both intermittent and continuous FMLA leave.

50.  On December 13, 2016, Hardman was made aware that Plaintiff was eligible for the FMLA leave she requested.

51.  On or about December 14, 2016, Plaintiff's doctor told her that she would talk to Hardman about putting Plaintiff on light duty at work for the remainder of her pregnancy.

52.  In response to Plaintiff's request for light duty work, Hardman informed Plaintiff that no light duty was available for her.

53.  On December 22, 2016, Hardman issued Plaintiff a "Final Written Warning."

54.  Upon receiving her Final Written Warning, Plaintiff reported to HR that Hardman was treating her unfairly because of her pregnancy.

55.  Hardman commented to Plaintiff that, Plaintiff "used to work so much better when [she wasn't] pregnant."

56.  On or about January 4, 2017, Plaintiff's doctor recommended that Plaintiff only work half days for the remainder of her pregnancy.

57.  On or about January 4, 2017, Plaintiff submitted FMLA paperwork and requested to be placed on a reduced schedule.

58.   On January 9, 2017, Plaintiff was notified that she was approved to work half days pursuant to her FMLA request for reduced schedule leave.

59.   On January 11, 2017, UKHA terminated Plaintiff's employment.

## COUNT I
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Sex Discrimination (Pregnancy)—Hostile Work Environment

60.   Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

61.   Plaintiff is a female and therefore a member of a protected class.

62.   In May 2016, Plaintiff notified UKHA that she was pregnant.

63.   UKHA subjected Plaintiff to severe and pervasive sex discrimination based on her pregnancy, including asking coworkers to vote on Plaintiff's eligibility for leave, interfering with Plaintiff's pregnancy-related leave, treating Plaintiff like a prisoner, and treating Plaintiff less favorably than her non-pregnant coworkers.

64.   The discrimination to which Plaintiff was subjected affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating and reasonably interfered with Plaintiff's ability to perform the functions of her employment.

65.   Plaintiff's pregnancy, and therefore sex, was at least a motivating factor in UKHA's decision to subject Plaintiff to a hostile work environment.

66.   At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly

authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine *respondeat superior*.

67. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

68. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

69. As shown by the foregoing, as a result of her sex and/or pregnancy, Plaintiff suffered intentional discrimination at the hands of the UKHA in violation of Title VII.

70. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

71. By failing to take prompt and effective remedial action, UKHA, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

72. UKHA's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA or to deter UKHA and other employers from like conduct in the future.

73. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable

attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

<u>**COUNT II**</u>
**Violation under 42 U.S.C. §§ 2000e** *et seq.*
**Sex Discrimination (Pregnancy)—Termination**

74. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

75. Plaintiff is a female and therefore a member of a protected class.

76. In May 2016, Plaintiff notified UKHA that she was pregnant.

77. UKHA terminated Plaintiff's employment.

78. Plaintiff's pregnancy, and therefore sex, was at least a motivating factor in UKHA's decision to terminate Plaintiff's employment.

79. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine *respondeat superior*.

80. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

81. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

82. As shown by the foregoing, as a result of her sex and/or pregnancy, Plaintiff suffered intentional discrimination at the hands of the UKHA in violation of Title VII.

83.   As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

84.   As a further direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

85.   By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, UKHA, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

86.   UKHA's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA or to deter UKHA and other companies from like conduct in the future.

87.   Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT III</u>**
**Violation under 42 U.S.C. § 2000e *et seq*.**
**Race Discrimination—Termination**

88. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

89. Plaintiff is African American and therefore a member of a protected class.

90. UKHA terminated Plaintiff's employment.

91. Plaintiff's race was at least a motivating factor in UKHA's decision to terminate her employment.

92. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

93. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

94. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

95. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of the UKHA, based on her race, in violation of Title VII.

96. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

97. As a further direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

*Brooks v. University of Kansas Hospital Authority*
Case No. _____
Plf.'s Complaint                          11 of 23

98.  By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, UKHA in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

99.  As shown by the foregoing, UKHA's conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA and other companies from like conduct in the future.

100.  Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## **COUNT IV**
### **Violation under 29 U.S.C. § 2615(a)(1)**
### **Interference**

101.  Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

102.  At all relevant times, Plaintiff had a serious health condition.

103.  Plaintiff needed to take leave from work because of that serious health condition.

104.  At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

105. UKHA prohibited Plaintiff's use of her leave, treated Plaintiff less favorably than her coworkers, and terminated Plaintiff's employment.

106. UKHA's aforementioned conduct interfered with Plaintiff's right to take FMLA leave.

107. A causal connection exists between the aforementioned conduct and Plaintiff's exercise of her FMLA rights.

108. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

109. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

110. Pursuant to 29 U.S.C. §2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT V**
**Violation under 29 U.S.C. §2615(a)(2)**
**Retaliation**

*Brooks v. University of Kansas Hospital Authority*
Case No. _____
Plf.'s Complaint                                        13 of 23

111. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

112. At all relevant times, Plaintiff had a serious health condition.

113. Plaintiff needed to take leave from work because of that serious health condition.

114. At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

115. Plaintiff engaged in a protected activity each time she requested FMLA leave between December 2016 and January 2017.

116. Plaintiff engaged in a protected activity each time she took FMLA leave between December 2016 and January 2017.

117. UKHA terminated Plaintiff's employment.

118. Plaintiff's exercise of her FMLA rights was at least a motivating factor in UKHA's decision to terminate her employment.

119. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

120. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

121. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for

equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI
### Violation under 42 U.S.C. §§ 12101 *et seq.*
### Disability Discrimination - Failure to Accommodate

122. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

123. At all relevant times, Plaintiff suffered from polyhydramnios and placenta previa.

124. At all relevant times, Plaintiff's above-described physical impairments substantially limited her major life activities, including but not limited to working and reproduction.

125. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has one or more physical impairments that substantially limits one or more of her major life activities.

126. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has a record of having one or more physical impairments that substantially limits one or more of her major life activities.

127. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because UKHA regarded her as having one or more physical impairments that substantially limits one or more of her major life activities.

128. At all relevant times, Plaintiff was a qualified individual pursuant to the ADAAA because she could perform the essential functions of her job with or without reasonable accommodation.

129. As a result of her polyhydramnios and placenta previa, Plaintiff requested a limited time off work.

130. As a result of her polyhydramnios and placenta previa, Plaintiff requested to be placed on light duty.

131. The above-referenced requests constituted reasonable accommodations that were possible for UKHA to provide and did not cause UKHA an undue burden.

132. UKHA refused to engage in any interactive process with Plaintiff to determine reasonable accommodations for her polyhydramnios and placenta previa.

133. UKHA chose not to provide a reasonable accommodation for Plaintiff's polyhydramnios and placenta previa.

134. Instead of providing a reasonable accommodation for Plaintiff's polyhydramnios and placenta previa, UKHA terminated Plaintiff's employment.

135. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

136. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

137. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

138. As shown by the foregoing, Plaintiff suffered intentional discrimination based on her disability at the hands of the UKHA in violation of the ADAAA.

139. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

140. As a further direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

141. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, UKHA, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

142. UKHA's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA or to deter UKHA and other entities from like conduct in the future.

143. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VII
### Violation under 42 U.S.C. §§ 12101 *et seq.*

**Disability Discrimination - Termination**

144.  Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

145.  At all relevant times, Plaintiff suffered from polyhydramnios and placenta previa.

146.  At all relevant times, Plaintiff's above-described physical impairments substantially limited her major life activities, including but not limited to working and reproduction.

147.  At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has one or more physical impairments that substantially limits one or more of her major life activities.

148.  At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has a record of having one or more physical impairments that substantially limits one or more of her major life activities.

149.  At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because UKHA regarded her as having one or more physical impairments that substantially limits one or more of her major life activities.

150.  At all relevant times, Plaintiff was a qualified individual pursuant to the ADAAA because she could perform the essential functions of her job with or without reasonable accommodation.

151.  UKHA terminated Plaintiff's employment.

152.  Plaintiff's polyhydramnios and placenta previa were at least motivating factors in UKHA's decision to terminate her employment.

153.  At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the

*Brooks v. University of Kansas Hospital Authority*
Case No. _____
Plf.'s Complaint                                    18 of 23

scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

154. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

155. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

156. As shown by the foregoing, Plaintiff suffered intentional discrimination based on her disability at the hands of the UKHA in violation of the ADAAA.

157. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

158. As a further direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

159. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, UKHA, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

160. UKHA's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA or to deter UKHA and other entities from like conduct in the future.

*Brooks v. University of Kansas Hospital Authority*
Case No. _____
Plf.'s Complaint                                                    19 of 23

161. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VIII**
**Violation under 42 U.S.C. §§ 12101 *et seq*.**
**Disability Discrimination - Retaliation**

162. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

163. At all relevant times, Plaintiff suffered from polyhydramnios and placenta previa.

164. At all relevant times, Plaintiff's above-described physical impairments substantially limited her major life activities, including but not limited to working and reproduction.

165. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has one or more physical impairments that substantially limits one or more of her major life activities.

166. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because she has a record of having one or more physical impairments that substantially limits one or more of her major life activities.

167. At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because UKHA regarded her as having one or more physical impairments that substantially limits one or more of her major life activities.

168. At all relevant times, Plaintiff was a qualified individual pursuant to the ADAAA because she could perform the essential functions of her job with or without reasonable accommodation.

169. As a result of her polyhydramnios and placenta previa, Plaintiff requested a limited time off work.

170. As a result of her polyhydramnios and placenta previa, Plaintiff requested to be placed on light duty.

171. The above-referenced requests constituted reasonable accommodations that were possible for UKHA to provide and did not cause UKHA an undue burden.

172. UKHA terminated Plaintiff's employment.

173. Plaintiff's requests for limited time off of work and light duty were at least motivating factors in UKHA's decision to terminate her employment.

174. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of UKHA, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by UKHA, thus making UKHA liable for said actions under the doctrine of *respondeat superior*.

175. UKHA failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

176. UKHA failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

177. As shown by the foregoing, Plaintiff suffered intentional discrimination based on her protected requests for reasonable accommodation for her disability at the hands of the UKHA in violation of the ADAAA.

178. As a direct and proximate result of UKHA's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

179. As a further direct and proximate result of UKHA's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

180. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, UKHA, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

181. UKHA's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish UKHA or to deter UKHA and other entities from like conduct in the future.

182. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from UKHA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against UKHA for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By:  _/s/ Joshua P. Wunderlich_____
Joshua P. Wunderlich  D. Kan #78506
j.wunderlich@cornerstonefirm.com
8350 N. St. Clair Ave., Suite 225
Kansas City, Missouri 64151
Telephone          (816) 581-4040
Facsimile          (816) 741-8889

ATTORNEYS FOR PLAINTIFF